UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

May 31 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-408-GWU

JESS W. RIGNEY,                                                    PLAINTIFF,

VS.                            **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 CFR 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 CFR
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jess W. Rigney, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and chronic obstructive pulmonary disease. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Rigney retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to medium level exertion, and also had the following non-exertional impairments. (Tr. 302). He: (1) could occasionally stoop, kneel, crouch, crawl, and

7

climb ladders, ropes, and scaffolds; and (2) should have no exposure to extremes of temperature or humidity, or to pulmonary irritants such as dust, fumes, or noxious gases. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 303). The VE also testified that the jobs she had described would allow the individual to alternate between sitting and standing. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although Mr. Rigney alleged disability due to back and knee pain, and shortness of breath which prevented him from standing or sitting more than 10 to 15 minutes at a time (Tr. 67, 287-8), he also admitted at the administrative hearing that he had stopped working at his job as a mine electrician in June, 2001 because the company he worked for closed down. (Tr. 280, 282). He described a remote history of knee surgery, and claimed he used a cane at times, but only around his house. (Tr. 292). He used inhalers for his breathing difficulties every day, and found medications helpful. (Tr. 292-1). He also had joint problems, which were worsened by damp weather, and described periodic irritability. (Tr. 297-9).

Medical records in the transcript show that Mr. Rigney was diagnosed with chronic lower back pain and knee pain, and was evaluated for the problems well

8

before his alleged onset date. (E.g., Tr. 129-48,157). Records from his current treating physician, Dr. Rachel Eubank, appear to indicate that he was not seen between June, 2000, approximately a year before the alleged onset date (Tr. 204), and November, 2002 (Tr. 202), more than a year after the alleged onset date (Tr. 67). The November, 2002 note states that Mr. Rigby had intended to return to work, but was turned down because he could not pass the physical examination. (Tr. 202). Dr. Eubank did not make any specific findings regarding permanent impairments, although she noted that Mr. Rigney was slow in moving and changed positions frequently. (Tr. 200, 202). She prescribed Flexeril and Lortab for back pain, as well as breathing medications.[1]

Dr. Eubank conducted a comprehensive physical examination in July, 2003. At this time, the plaintiff complained of degenerative joint disease, lung disease, headaches which he believed were the result of "aggravation," and feelings of depression and uselessness because he was not able to work. (Tr. 193). He had obtained over-the-counter glasses to help in reading the newspaper, and also complained of ringing in the ears and decreased hearing. (Tr. 193-4). Dr. Eubank's examination showed that Mr. Rigney was in no acute distress, and his lung examination was normal except for an increased A/P diameter of the chest and an

---

[1]Although the plaintiff testified at the hearing in March, 2004 that he had stopped smoking four years earlier (Tr. 291), he was telling Dr. Eubank that he was still smoking occasionally in February, 2003 (Tr. 200).

9

occasional expiratory wheeze. (Tr. 194). While his back was tender to palpation in the lumbar area, the patient moved stiffly, and straight leg raising was positive on the right, reflexes were equal and there were no observed musculoskeletal abnormalities. (Tr. 195). Dr. Eubank described his mood and affect as normal. (Id.) She did not impose any specific functional restrictions, allowing Mr. Rigney to do activities "as tolerated," but did advise him to avoid dusty atmospheres and have a full examination by ophthalmologist if he found his reading glasses were inadequate. (Tr. 196). She also advised a hearing examination for disability purposes, although his hearing was also described as "normal." (Tr. 194, 196). His laboratory tests were also normal except for high cholesterol and high triglycerides.[2]

A consultative pulmonary examination by Dr. Glen Baker in January, 2003 showed that Mr. Rigney had category 1/0 pneumoconiosis by x-ray, but his pulmonary function studies and arterial blood gases were within normal limits. (Tr. 180-2). An EKG showed normal sinus rhythm with "nonspecific" ST-T changes. (Tr. 182). Dr. Baker stated that there would be minimal or no impairment due to lung disease/bronchitis, although he felt that the plaintiff should be referred to a specialist to follow up a questionable left ventricular dysfunction. (Tr. 183).

---

[2]The previous month, Dr. Eubank had obtained an "abnormal" EKG, and he was now advised to go on low dose aspirin therapy. (Tr. 197, 220).

Rigney

Dr. W. Roy Stauffer performed a consultative physical examination in February, 2003. He did not see a chest x-ray, but found that the plaintiff only wheezed on forcible exhalation, and a pulmonary function study was within normal limits. (Tr. 185, 187). Heart sounds were normal. (Tr. 185). There was lumbosacral spine tenderness and also tenderness of the MCP joints of the hands and of the right knee. (Tr. 186). Straight leg raising was positive at 45 degrees on the right due to pain, and forward flexion was somewhat reduced at 70 degrees. (Id.) The plaintiff had a "slightly" antalgic gait. (Id.). He could perform a full squat, and could walk on his heels and toes without difficulty, although there was some low back pain. (Id.). The left patellar and Achilles reflexes were somewhat decreased. (Id.). Dr. Stauffer concluded that Mr. Rigney did have some significant back pain, and the decreased reflexes on the left produced a question of left radiculopathy. He concluded that Mr. Rigney would have the ability to perform medium work with non-exertional restrictions consistent with the hypothetical question presented by the ALJ to the VE, supra. (Tr. 187).

State agency physicians who reviewed a portion of the record agreed with Dr. Stauffer's assessment. (Tr. 227-47). A state agency psychologist found no evidence of a medically determinable mental impairment. (Tr. 248).

11

Rigney

Since no physician identified greater restrictions than Dr. Stauffer, the ALJ's decision to adopt the functional limitations from Dr. Stauffer's report is supported by substantial evidence.

The plaintiff argues generally that the hypothetical factors were incorrect, but does not cite any specific error, and even mistakenly asserts that the ALJ limited the plaintiff to light level exertion.

The plaintiff also makes arguments that the ALJ did not consider his impairments in combination, but a review of the ALJ's decision shows that the administrative decision was adequate in this regard. (Tr. 21, 24). Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

Finally, the plaintiff argues that it was error to give greater weight to consultative sources than to the plaintiff's treating physicians, but points to no findings or conclusions by the treating physicians contrary to the ALJ's functional capacity conclusions.

The decision will be affirmed.

This the ___ 3/ ___ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12